UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

AHMED ALI MOHSIN AL BAWI,

            Petitioner,

   v.                                     Case No. 23-cv-0940-bhl

ADMINISTRATOR LANCE WIERSMA,

            Respondent.

## ORDER DENYING HABEAS PETITION

    Habeas petitioner Ahmed Ali Mohsin Al Bawi is an Iraqi citizen and permanent U.S. resident who faces deportation after pleading no contest to sexually assaulting a friend while she slept. Through his habeas petition, Al Bawi seeks to vacate his state court conviction on grounds that he received constitutionally ineffective assistance of counsel based on counsel's advice to him concerning the immigration consequences of his no contest plea. The Wisconsin Court of Appeals rejected Al Bawi's claim, concluding that counsel had provided him with correct advice when counsel told Al Bawi that he "would be subject to deportation" as a result of his plea. Because that decision was not objectively unreasonable or contrary to clearly established federal law, Al Bawi's petition for writ of habeas corpus will be denied.

## BACKGROUND

    Al Bawi is an Iraqi citizen who previously served as a translator for the U.S. military. (ECF No. 9-3 ¶3.) In 2012, he was granted a special visa and became a lawful permanent resident of the United States. (*Id.*) In August 2018, Al Bawi was charged in Outagamie County Circuit Court with third-degree sexual assault. (*Id.* ¶4.) According to the criminal complaint, Al Bawi made unwanted sexual advances toward a female friend and assaulted her while she was sleeping. (*Id.*) In December 2019, Al Bawi pleaded no contest to the charge. (*Id.* ¶5.) He was given a withheld sentence and five years' probation with twelve months' conditional jail time. (*Id.*) Approximately five months after Al Bawi began serving his jail time, the Outagamie County Jail received an immigration detainer notice from the U.S. Department of Homeland Security (DHS). (*Id.* ¶6.)

The notice stated that there was "probable cause" that Al Bawi was "removable under U.S. immigration law" and asked the jail to notify DHS when he would be released and maintain custody of Al Bawi until DHS could "assume custody." (*Id.*)

Al Bawi then filed a postconviction motion, seeking to withdraw his no-contest plea. (*Id.* ¶7.) He argued that he had received ineffective assistance of counsel because he was given deficient legal advice concerning the deportation consequences of his plea. (*Id.*) He further claimed he would not have pleaded no contest if he had been properly advised of the consequences. (*Id.*) In support of his motion, Al Bawi provided an affidavit from his trial counsel in which counsel stated that he had "told [Al Bawi] on a number of occasions . . . that a guilty plea could potentially make him subject to deportation," and that Al Bawi had responded each time by insisting that his service to the U.S. military "would protect him from deportation." (*Id.* ¶8.) Counsel also stated that he did not recall actually researching the immigration consequences of a third-degree-sexual-assault conviction during his representation of Al Bawi. (*Id.*)

The circuit court held a *Machner*[1] hearing on Al Bawi's motion and heard testimony from both Al Bawi and his trial counsel. (*Id.* ¶9.) Consistent with his affidavit, counsel confirmed that he had repeatedly discussed with Al Bawi his immigration status, and each time Al Bawi had insisted that "his immigration status was secure; that he had worked for the military." (*Id.*) Counsel also testified that he "always consistently told [Al Bawi] that he would be subject to deportation if he entered a plea." (*Id.*) Counsel admitted that he did not research the immigration consequences of Al Bawi's charge and did not weigh in "on the likelihood that [Al Bawi] would be deported." (*Id.*) But Counsel reiterated that he "would tell [Al Bawi] multiple times that this was a serious charge and he would be subject to deportation, not necessarily deported but would be subject to that, and he would have to deal with that in immigration court." (*Id.*) Counsel further noted that he affirmatively discussed with his client that deportations had increased under the then-presiding President. (*Id.* ¶10.) Counsel also testified that he had previous experience representing immigrant criminal defendants and had participated in immigration law seminars. (*Id.*)

Al Bawi's testimony contradicted his attorney's version of their discussions. According to Al Bawi, he and counsel only discussed the immigration consequences of his plea twice. (*Id.* ¶11.) On the first occasion, Al Bawi asked counsel if he thought Al Bawi would be deported despite his

---

[1] *See State v. Machner*, 285 N.W.2d 905 (Wis. Ct. App. 1979).

work for the military and counsel responded, "I'm not an immigration lawyer, but I highly doubt it." (*Id.*) On the second, counsel purportedly told Al Bawi not to worry about citizenship concerns because he "worked for the Army" and did not mention deportation at all. (*Id.*) Al Bawi also testified he would not have pleaded no contest if counsel had told him there was a "strong possibility" that he would be deported because "getting deported is a death sentence" to him because he is "on a hit list" of an Iraqi insurgent group. (*Id.* ¶12.)

The circuit court denied Al Bawi's motion in a written decision. (*Id.* ¶13.) The court noted the "multiple inconsistencies" between the witnesses' testimony but ultimately found that counsel's testimony was the "most credible." (*Id.*) Based on this credibility determination, the court found that counsel had advised Al Bawi that he "would be subject to deportation" and would have to deal with that in immigration court, and that counsel had not offered a specific opinion on the likelihood of Al Bawi actually being deported. (*Id.*) Based on these facts, the court concluded counsel's performance was not constitutionally deficient. (*Id.* ¶14.) The court explained that counsel's advice that Al Bawi would be subject to deportation accurately reflected the risk of deportation that Al Bawi faced. (*Id.*) It further held that, even if counsel's advice was deficient, Al Bawi had not shown that he was prejudiced by the deficiency. (*Id.*)

Al Bawi appealed, arguing that trial counsel performed deficiently by failing to give him a "probabilistic assessment" of his risk of deportation and by failing to perform legal research or consult with an immigration attorney to determine Al Bawi's deportation risk given his prior work with the U.S. military. (*Id.* ¶1.) On January 18, 2023, the Wisconsin Court of Appeals affirmed Al Bawi's conviction and denied his appeal. (*Id.* at 1, 19.) The court of appeals concluded that "Al Bawi's trial counsel correctly advised Al Bawi that he 'would be subject to deportation' upon pleading no contest to the charge of third-degree sexual assault." (*Id.* ¶2.) Relying on *Padilla v. Kentucky*, 559 U.S. 356 (2010), and the Wisconsin Supreme Court's decision in *State v. Shata*, 868 N.W.2d 93 (Wis. 2015), the appeals court held that, because counsel gave accurate advice, counsel did not perform deficiently despite not specifically quantifying the risk of deportation Al Bawi faced or specifically researching the issue. (*Id.* ¶¶38–39.)

On April 18, 2023, the Wisconsin Supreme Court denied Al Bawi's petition for further review. (ECF No. 9-4 at 21.) This federal habeas petition followed on July 13, 2023.

## LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) limits a federal court's ability to grant habeas corpus relief. With respect to a claim adjudicated on the merits in state court, a habeas petition can be granted only if the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d); *Cullen v. Pinholster*, 563 U.S. 170, 180–81 (2011). This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted). It is intentionally very difficult to meet. *See Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013).

A state court decision is "contrary to . . . clearly established Federal law" within the meaning of §2254(d)(1) if the state court "applie[d] a rule different from the governing law set forth" by Supreme Court precedent or when the state court "decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court decision involves an "unreasonable" application of established precedent within the meaning of §2254(d)(2) when the "state court identifies the correct governing legal principle . . . but unreasonably applies it to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). Under either prong, it is not enough that "a federal court believes the state court's determination was incorrect" or erroneous. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Rather, the state court's application of clearly established law must be "objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods v. Donald*, 575 U.S. 312, 316 (2015). The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility that fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'" *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

## ANALYSIS

Al Bawi asserts that he is entitled to habeas relief because his trial counsel gave him constitutionally ineffective advice on the deportation consequences of his no-contest plea, citing *Padilla v. Kentucky*, 559 U.S. 356 (2010). (ECF No. 1 at 6–7.) Recognizing that the Wisconsin

Court of Appeals denied his claim on the merits, Al Bawi argues that he is entitled to relief even under AEDPA's highly deferential standards for two reasons. (ECF No. 14 at 5.) First, he argues that the state court incorrectly and unreasonably applied *Padilla* in denying his claim. (*Id.* at 10–14.) Second, he argues that the state court's decision was contrary to *Padilla* because it denied relief on materially indistinguishable facts. (*Id.* at 14–23.) Respondent counters that the court of appeals' decision was not unreasonable or contrary to *Padilla*. Because the record confirms that the Wisconsin Court of Appeals' decision denying Al Bawi's ineffective assistance claim was neither contrary to nor an unreasonable application of federal law, as set forth in *Padilla* by the U.S. Supreme Court, Al Bawi's petition will be denied.

A claim for ineffective assistance of counsel claim is governed by *Strickland v. Washington*, 466 U.S. 668 (1984). To establish a *Strickland* violation, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Under *Strickland*, a petitioner must establish both (1) deficient performance by counsel and (2) prejudice. *See id.* In connection with advice related to a guilty plea, the Supreme Court has held that a defendant can satisfy the prejudice prong by showing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

In *Padilla*, the Supreme Court held that the Sixth Amendment right to counsel extends to counsel's advice concerning the deportation consequences of a guilty plea. 559 U.S. at 366. Trial counsel in *Padilla* had incorrectly advised his client, a lawful permanent resident from Honduras who had served in Vietnam, that he "did not have to worry about immigration status" if he pleaded guilty to transporting a large amount of marijuana in his tractor-trailer. *Id.* at 359. Relying upon that advice, the defendant entered a guilty plea that, contrary to counsel's advice, made his deportation "virtually mandatory." *Id.* at 359. In these circumstances, the Supreme Court concluded that counsel had provided ineffective assistance. *Id.* at 366–75. The Court first concluded that the immigration consequences of a guilty plea, although part of a separate civil proceeding, are nonetheless an "integral part" of the penalty that could be imposed on a noncitizen who agrees to plead guilty. *Id.* at 364–66. The Court then reaffirmed *Strickland*'s teaching that counsel's representation is subject to an objective standard of reasonableness. *Id.* at 366. It concluded that counsel had failed to satisfy this standard, noting that a simple reading of the applicable immigration statute showed that the defendant's guilty plea would render him

"deportable" and thus "counsel's advice was incorrect." *Id*. at 368–69. Acknowledging that immigration law can be complex, the Court explained that where "the deportation consequences of a particular plea are unclear or uncertain," counsel "need do no more than advise a noncitizen client that pending criminal charges *may* carry a risk of adverse immigration consequences." *Id*. at 369 (emphasis added). The Court further explained that "when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear." *Id.*

I.  **The Wisconsin Court of Appeals' Did Not Unreasonably Apply *Padilla* in Rejecting Al Bawi's Ineffective Assistance of Counsel Claim.**

Al Bawi objects to the Wisconsin Court of Appeals' conclusion that his trial counsel's performance was not deficient under *Strickland* and *Padilla*. (ECF No. 14 at 10–14.) Al Bawi admits that the state court correctly identified *Padilla* as controlling his claim but argues that state court's application of *Padilla* was unreasonable. (*Id.*) Respondent insists the state court reasonably applied *Padilla* and properly found that trial counsel had accurately advised Al Bawi of the immigration consequences of his guilty plea. (ECF No. 19 at 10–19.) The Court agrees with Respondent that Al Bawi has not shown he is entitled to habeas relief.

In challenging the state court's ruling, Al Bawi contends that "*Padilla* clearly delineated two distinct standards of advice that defense counsel is required to give, depending on the clarity of the immigration consequences," and insists the court of appeals unreasonably applied the "less-stringent test" to Al Bawi's claim. (ECF No. 14 at 11–12.) According to Al Bawi's reading of *Padilla*, the Supreme Court first created a basic duty requiring defense counsel to advise noncitizen clients when a resulting "conviction 'may carry a risk of adverse immigration consequences.'" (*Id.* at 8–9.) He contends this duty applies only in situations where the immigration consequences "are not succinct and straightforward." (*Id.* at 13 (quoting *Padilla*, 559 U.S. at 369).) He insists *Padilla* also created a second, heighted duty to give "correct advice," when the immigration consequences of a guilty plea are clear. (*Id.* at 12–13 (quoting *Padilla*, 559 U.S. at 368–69).) Based on this formulation, he argues that the Wisconsin Court of Appeals incorrectly applied the first "weaker test" when it should have applied the latter "more stringent deficiency test" to evaluate his counsel's advice. (*Id.* at 11–14.)

Al Bawi's argument fails because he misreads and overstates *Padilla*'s holding. The specific holding in *Padilla* is "that counsel must inform her client whether his plea carries a risk of deportation." 559 U.S. at 374. Applying this rule, the Supreme Court concluded that counsel's

incorrect immigration advice—that his client "did not have to worry about immigration status" if he pleaded guilty—fell below the standard of effectiveness guaranteed by the Sixth Amendment under *Strickland*. *Id.* at 359–60.  The Court also took pains to emphasize that although immigration law can be complex, particularly for a non-immigration criminal defense lawyer, where the immigration consequences of a guilty plea are clear, counsel has a duty "to give *correct* advice." *Id.* at 369 (emphasis added).  In *Padilla*, the immigration statute specifically made the defendant "deportable" and thus counsel gave incorrect advice when he told his client he did not "have to worry" about his immigration status.  *Id.* at 368.

Contrary to Al Bawi's suggestion, the Wisconsin Court of Appeals correctly identified and applied the standard pronounced in *Padilla*, specifically stating that "the relevant question is whether Al Bawi's attorney provided correct legal advice."  (ECF No. 9-3 ¶25 n.6.)  The state court then concluded that counsel had correctly advised Al Bawi that he "would be subject to deportation" if he pleaded no contest to third-degree sexual assault.  (*Id.* ¶39.)  Because this advice was correct, counsel's performance was adequate under *Padilla*.  (*See id.*)  Al Bawi has provided no compelling argument that this conclusion was objectively unreasonable sufficient to warrant habeas relief.

Al Bawi attempts to nitpick the state court's opinion, highlighting certain statements that he contends are inconsistent with certain language in *Padilla*.  He focuses on the court's statement that "counsel must inform [the defendant] whether his [or her] plea carries a *risk* of deportation."  (ECF No. 14 at 12 (quoting ECF No. 9-3 ¶29 (emphasis in original)).)  To Al Bawi, this is evidence that the state court applied *Padilla*'s "less-stringent test" that he contends is only appropriate when immigration consequences are unclear.  (*Id.*)  But the language he quotes is, itself, a direct quote from *Padilla*.  *See* 559 U.S. at 374 ("To satisfy this responsibility, we now hold that counsel must inform her client whether his plea carries a risk of deportation.")  And while Al Bawi reads *Padilla* as creating two distinct tests, that is far from the only reasonable reading of the Supreme Court's holding.  Indeed, this Court does not embrace Al Bawi's suggestion that the Supreme Court created a "more-stringent test" and a "less-stringent test" depending on the circumstances.  The Supreme Court created a single test, requiring counsel to provide correct advice concerning the potential immigration consequences of a guilty plea, while noting that that advice will depend on the clarity of the risk presented.  *See id.* at 369, 374.  In sum, Al Bawi has simply not shown that the Wisconsin Court of Appeal's application of *Padilla* was wrong, let alone unreasonable.

Al Bawi also faults the state court for relying on *State v. Shata*, 868 N.W.2d 93 (Wis. 2015), a Wisconsin Supreme Court decision later criticized (and indeed rejected) by a magistrate judge of this Court. (ECF No. 14 at 13.) In *Shata*, the Wisconsin Supreme Court applied *Padilla* in the context of a defendant who entered a guilty plea despite a warning from trial counsel that there was a "strong chance" that he could be deported if he did so. 868 N.W.2d at 96–97, 103. The Wisconsin Court of Appeals had concluded that counsel's advice was ineffective under *Padilla* because counsel had failed to provide his client "with complete and accurate information about the deportation consequences of his plea." *Id*. at 101. The Wisconsin Supreme Court reversed, concluding that counsel had provided constitutionally adequate assistance by advising the defendant of the strong likelihood of deportation if he pleaded guilty. *Id.* at 114–15. In so holding, the court rejected the suggestion that *Padilla* required counsel "to use any particular words, such as 'inevitable deportation,' or to even convey the idea of inevitable deportation." *Id.* at 110. Because counsel's advice that there was a "strong chance" the defendant would be deported was correct, counsel had provided adequate representation under *Padilla*, even though counsel admitted he did not research or read the relevant immigration statutes. *Id.* at 111–15.

The Wisconsin Supreme Court's decision was questioned by a magistrate judge of this Court in a later federal habeas proceeding. In *Shata v. Symdon* (*Shata II*), No. 16-CV-574 (E.D. Wis. Dec. 12, 2018), a case in which the parties had stipulated to magistrate judge jurisdiction, the court granted Shata's petition for relief under 28 U.S.C. §2254 and ordered his conviction vacated, concluding that the Wisconsin Supreme Court had unreasonably applied *Padilla*. (ECF No. 14-1.) It does not appear that the State appealed from the magistrate judge's ruling.

Citing the magistrate judge's habeas decision in *Shata II*, Al Bawi contends he is entitled to habeas relief too. He criticizes the Wisconsin Court of Appeals for citing the Wisconsin Supreme Court's *Shata* decision in rejecting his ineffective assistance claim. (ECF No. 14 at 13.) Al Bawi's invocation of *Shata II* is misplaced for several reasons. As an initial matter, the magistrate judge's habeas decision in *Shata II* is non-precedential and not binding on this Court. *See Anderson v. Romero*, 72 F.3d 518, 525 (7th Cir. 1995) (noting that district court decisions and unpublished Seventh Circuit decisions have no precedential authority). At most, the magistrate judge's unpublished decision might have some persuasive value, but this Court is not persuaded by the reasoning in that decision. Contrary to the magistrate judge's conclusion, the Court does not agree that the Wisconsin Supreme Court's decision in *Shata* was "contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *See* 28 U.S.C. §2254(d)(1). The Wisconsin Supreme Court cited and applied the correct federal precedents, *Strickland* and *Padilla*. *Shata*, 868 N.W.2d at 102–15. It also correctly identified the dispositive issue as "whether [trial counsel] gave Shata correct advice regarding the possibility of being deported." *Id.* at 103. It then concluded that, unlike in *Padilla*, counsel had provided adequate advice because the advice he provided "was actually correct." *Id.* at 113. There is nothing unreasonable about the Wisconsin Supreme Court's application of *Padilla* in *Shata*. While the unpublished habeas decision concluded otherwise, this Court notes that that decision devotes just two paragraphs to analyzing whether the state court unreasonably applied *Padilla*. (*See* ECF No. 14-1 at 20–21.) The Court also notes that the magistrate judge appears to have gone back to the transcripts from the petitioner's post-conviction hearing to reweigh and reject the state court's factual finding that counsel had provided correct legal advice. (*See id.*) It is not for a federal habeas court to revisit the state courts' factual determinations or to impose its own reading of Supreme Court precedents in lieu of the state court's reading except in the limited situations provided in Section 2254(d). A federal habeas court may conclude that a state court's application of federal law was unreasonable only when "it is so erroneous that 'there is no possibility that fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'" *Jackson*, 569 U.S. 505 at 508–09 (quoting *Harrington*, 562 U.S. at 102). This Court is not persuaded that the Wisconsin Supreme Court's decision was wrong, let alone so erroneous that federal habeas relief was warranted. The same is true of the Wisconsin Court of Appeals' decision in Al Bawi's case.

    *Padilla* requires that, in situations where the deportation consequences of a plea are clear, counsel must provide a noncitizen defendant with "correct advice" concerning those consequences. The Wisconsin Court of Appeals concluded that Al Bawi's counsel advised Al Bawi that he "would be subject to deportation" if he pleaded guilty and that this advice was correct. The state court also found that it was Al Bawi who insisted that his prior work for the United States military that would protect him from possible deportation. To be eligible for habeas relief under AEDPA, Al Bawi must show that the state court's conclusion was an objectively unreasonable application of *Padilla*. Because he has not done so, he is not entitled to habeas relief.

## II. The Wisconsin Court of Appeals' Decision Was Not Contrary to *Padilla* Because the Facts of Al Bawi's Case Are Materially Distinguishable.

Al Bawi also argues that the state court's denial of his ineffective assistance claim was contrary to *Padilla* because the Supreme Court concluded counsel's performance was ineffective in that case and the facts of the two cases are materially indistinguishable. (ECF No. 14 at 14–18.) As Respondent correctly argues, however, Al Bawi "grossly overstates the supposed parity between his case and *Padilla*." (ECF No. 19 at 19.) The advice the Supreme Court found ineffective in *Padilla* is far different than the advice counsel provided Al Bawi. In Al Bawi's case, the circuit court found that counsel informed him that "he would be subject to deportation" if he pleaded no contest. (ECF No. 9-3 ¶9.) As the Wisconsin Court of Appeals explained, this advice was correct. In *Padilla*, on the other hand, defense counsel incorrectly told his client that he "did not have to worry about immigration status since he had been in the country so long." *Padilla*, 559 U.S. at 359. Thus, the defendant in *Padilla* was given incorrect legal advice, while Al Bawi's counsel correctly told him that he would be subject to deportation. Al Bawi argues that this distinction is immaterial because, under *Padilla*, "there is no difference between providing affirmative misadvice and failing to provide available immigration advice . . . ." (ECF No. 14 at 17.) This argument misstates the facts and holding of *Padilla* and downplays the factual findings in Al Bawi's case. Again, the defendant in *Padilla* received advice on the immigration consequences of his guilty plea that was flat out wrong. *See Padilla*, 559 U.S. at 369. Not only did counsel fail to warn his client that his guilty plea would make him deportable, but he affirmatively advised him that the plea would not affect his immigration status. *See id.* Al Bawi's counsel did just the opposite. The state court found that Al Bawi's counsel specifically informed him that his guilty plea would render him subject to deportation, and that Al Bawi responded by downplaying that risk and insisting his military service would save him. (ECF No. 9-3 ¶37.) Al Bawi's situation is thus very different from the defendant in *Padilla*.

## CERTIFICATE OF APPEALABILITY

Under Rule 11(a) of the Rules Governing Section 2254 Cases, the Court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitution right. *See* 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate (or for that matter, agree that) the petition should have been resolved in a different manner

or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). The Court declines to issue a certificate of appealability because reasonable jurists could not debate the Court's decision to deny the petition on the merits.

## CONCLUSION

Because Al Bawi has not established that the Wisconsin Court of Appeals' decision rejecting his ineffective assistance of counsel claim was objectively unreasonable or contrary to clearly established federal law, his petition for writ of habeas corpus will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Ahmed Ali Mohsin Al Bawi's petition for writ of habeas corpus, ECF No. 1, is **DENIED**. The Clerk of Court is directed to enter judgment accordingly.

**IT IS FURTHER ORDERED** that because the Court does not find that a reasonable jurist could conclude that the petition should have been resolved in a different manner, *see Slack v. McDaniel*, 529 U.S. 473, 484 (2000), a certificate of appealability **SHALL NOT ISSUE**.

Dated at Milwaukee, Wisconsin on January 8, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge